# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

THERESA D. LOYD,              :

    Plaintiff,               :

vs.                           :    CA 13-0513-C

CAROLYN W. COLVIN,            :
Acting Commissioner of Social Security,
                                        :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 22 & 23 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of plaintiff's counsel at the April 30, 2014 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

    [1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 22 & 23 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

Plaintiff alleges disability due to a history of a cerebrovascular accident, migraine headaches, backache, and a history of substance abuse. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant last met the insured status requirements of the Social Security Act through June 30, 2011.**
>
> **2. The claimant has not engaged in substantial gainful activity since October 16, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> **3. The claimant has the following severe impairments: history of cerebrovascular accident, migraine headaches, backache, and history of substance abuse (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> A review of the record discloses the claimant's hospitalization in October 2010, with the discharge summary citing the claimant's assessed sensory motor lacunar stroke affecting the left side of her body, as well as additional assessments of hypertension, tobacco abuse, history of asthma, history of migraine[s] in the past, and history of anxiety. Notations indicated that the claimant had experienced a three-day history of left-sided weakness and mild dysarthria prior to hospitalization, but that, during hospitalization, her dysarthria resolved and she made significant progress in muscle strength. An MRI of the brain illustrated two adjacent recent lacunar infarcts, and carotid duplex studies showed mild to moderate plaquing at the level of the common carotid arteries bilaterally. Further, there was Doppler evidence suggesting 50-69% diameter stenosis of both proximal internal carotid arties, with both vertebral arteries having normal antegrade flow.
>
> Notations from Mobile County Health Department from October 26, 2010, disclosed that the claimant had experienced back pain for the previous three days and needed a refill of Soma. She was assessed with anxiety, backache, and lacunar stroke. During examination, while tenderness to palpation was noted, no sensory exam abnormalities were detected; no dysfunction in motor examination was observed; no coordination/cerebellum abnormalities were noted; and normal reflexes

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

were detected. The claimant returned to the health department on November 15, 2010, with notations indicating that her stroke symptoms were resolving and that she had equal grip bilaterally. Notations further indicated that the claimant was not taking medication. At a visit to the Mobile County Health Department on February 14, 2011, examination illustrated sound distortions in the claimant's speech, reduced motor strength on the left side, incoordination of the left side during coordination/cerebellum examination, and limited balance. She was assessed with observed combined systolic and diastolic elevation, backache, and right hemispheric stroke. Medication refills were given. The claimant returned for treatment on March 1, 2011, with assessments of headache syndrome and left hemisphere stroke being made.

At a visit to the Mobile County Health Department on April 13, 2011, the claimant received assessments of anxiety, observed combined systolic and diastolic elevation, asthma, backache, and continuous nicotine dependence. Medications were administered and refills of prescription medications obtained. The claimant was assessed with backache and stroke syndrome at a visit on June 13, 2011, with it also being noted that she presented for a repeat prescription for medication. Treatment notations dated October 3, 2011, disclosed that . . . examination of [the claimant's] musculoskeletal system was normal; her motor examination demonstrated no dysfunction; and no coordination/cerebellum abnormalities were noted. She was diagnosed with classic migraine, anxiety, and backache, and she obtained medication refills. The claimant was evaluated on February 2, 2012, at the Mobile County Health Department and was observed to have pain with palpation of the lower lumbar spine. However, motor examination demonstrated no dysfunction and no coordination/cerebellum abnormalities were noted. Assessments included classic migraine, backache, headache syndromes, and primary insomnia, and medication refills were obtained. On February 28, 2012, the claimant underwent imaging of the cervical spine that reflected well preserved disc spaces, no anterior soft tissue swelling, and normal alignment and contour of the vertebrae with minimal spurring anteriorly at the C5 level. Additionally, no acute fracture or dislocation was appreciated. Imaging of the claimant's lumbar spine illustrated minimal spurring; no compression fracture or subluxation; and either a small intervertebral disc herniation or Schmorl's node at the superior endplate of the L2 level.

At a consultative neurological evaluation with Ilyas A. Shaikh, M.D., in April 2011, the claimant complained of neck and back pain, as well as left-sided weakness. Examination of the spine disclosed no tenderness to palpation and a fairly normal range of motion. During neurological examination, the claimant did not demonstrate any dysarthria, dysphasia, or dysphonia; her face was bilaterally symmetrical. The claimant's motor strength was bilaterally symmetrical and 5/5 to abduction, adduction, flexion, and extension of the upper and lower extremities, despite her demonstration of poor effort on the left side. Physical examination

disclosed no rigidity or spasticity. Additionally, the claimant's fine motor skills were normal; she was able to make a fist and oppose her thumb to her fingers; and she was able to turn the doorknob and tie her shoelaces. Dr. Shaikh also noted that the claimant's grip strength was 5/5 and bilaterally symmetrical; her sensations were intact; her Romberg was negative; her cerebellar functions were intact by finger-nose-finger, finger tapping, and rapid alternate movements; her deep tendon reflexes were 2+ bilaterally at the biceps, triceps, brachioradialis, knees, and ankles; and her toes were down going and there was no clonus. Regarding gait/station, the claimant was able to stand on her heels and toes and her tandem gait was *mildly* compromised. According to Dr. Shaikh, the claimant showed poor effort in touching the fingers to the toes and she limped and favored her left leg. However, the claimant did not use any hand held assistive device and had a normal association of arm swings. Dr. Shaikh's diagnostic impression consisted of history of back pain, history of left-sided weakness, and history of headaches (probably migraine in nature). In comments, Dr. Shaikh noted that the claimant had been treated for mild left-sided weakness related to her lacunar sensory motor infarct and that, despite neurological examination being fairly normal, she continued to demonstrate left-sided weakness and to experience migraine headache, as well.

. . .

In June 2011, Kenneth Sherman, M.D., [the] treating source associated with Mobile County Health Department, completed a physical capacities evaluation in which he referenced the claimant's multiple TIA's and stroke. Dr. Sherman opined that the claimant could sit for four hours total during an entire eight hour day, could stand for three hours total during an eight hour day, and could walk for two hours total during an eight hour day. He further concluded that the claimant could continuously lift up to five pounds, could frequently lift six to ten pounds, could occasionally lift eleven to twenty pounds, and could never lift twenty-one pounds or more. According to Dr. Sherman, the claimant could frequently carry up to five pounds, could occasionally carry six to ten pounds, and could never carry eleven or more pounds. While Dr. Sherman indicated that the claimant could use her right hand for simple grasping, he reported that she could not use her left hand for simple grasping. Dr. Sherman opined that the claimant could use both hands for pushing and pulling of arm controls, but could not use either hand for fine manipulation. He additionally concluded that the claimant could use both feet for pushing and pulling of leg controls; could frequently bend; could occasionally crawl; and could never squat, climb, or reach. Finally, Dr. Sherman assigned the claimant a total restriction on exposure to dust, fumes, and gases; moderate restriction of activities involving being around unprotected heights and driving automotive equipment; and mild restriction of activities involving being around moving machinery and exposure to marked changes in temperature and humidity. In his clinical assessment of pain evaluation, Dr. Sherman concluded that the claimant's

pain was present to such an extent as to be distracting to the adequate performance of daily activities or work and that physical activity, such as walking, standing, bending, stooping, and moving of extremities, would greatly increase the claimant's pain to such a degree as to cause distraction from a task or total abandonment of the task. Further, Dr. Sherman indicated that medication side effects could be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention, and drowsiness.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

. . .

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry no more than twenty pounds occasionally and ten pounds frequently; to have unrestricted sitting, standing, and walking; to perform frequent fingering on the left; to frequently use foot controls on the left; to occasionally bend, stoop, crouch, and climb stairs/ramps; to never climb ladders, scaffolding, and ropes; to never kneel or crawl; to never work around unprotected heights or around dangerous equipment; to be able to understand [and] carry out simple, one or two step instructions; to be able to understand [and] carry out "detailed but uninvolved" written or oral instructions involving a few concrete variables in or from standardized situations; to avoid tasks involving a variety of instructions or tasks; to perform no work in crowds; to occasionally work around the public; and to frequently work around co-workers.**

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . .

The claimant was hospitalized in October 2010 with a sensory motor lacunar stroke affecting the left side of the body; however, during hospitalization, her dysarthria resolved and she made significant progress in muscle strength. The claimant presented for treatment to Mobile County Health Department from late October 2010 through late February 2012 on an intermittent basis for assessments of stroke/stroke syndrome, anxiety, backache, combined systolic and diastolic elevation, classic migraine, headache syndrome, asthma, continuous nicotine dependence, and primary insomnia. However, notations from Mobile County Health Department failed to indicate that the claimant experienced disabling or debilitating symptoms from either her stroke or from any other diagnosed condition. The undersigned finds that the objectively demonstrable evidence of record fails to support that the claimant is as impaired as she has alleged. The undersigned notes that no credible treating or consultative physician has opined that the claimant was disabled because of any physical or mental condition or from any resulting symptoms. Consultative evaluators of record failed to conclude that the claimant was precluded from work activity because of conditions or related symptoms; in fact, Dr. Starkey opined that the claimant's ability to understand, remember, and carry out simple/concrete instructions appeared adequate currently and that her ability to work independently versus with close supervision appeared adequate.

The undersigned cannot grant great weight to the findings of Dr. Sherman in his physical capacities evaluation, in that the credible, objective record, including his own records from Mobile County Health Department, do not support the limitations he placed on the claimant's sitting, standing, and walking, as well as lifting and carrying. Additionally, the undersigned references Dr. Sherman's citation of "multiple TIA's" in Exhibit 10F and finds no evidence in the current record, including notations of Dr. Sherman, that the claimant experienced any difficulty with such condition. The findings with respect to pain made in his clinical assessment of pain evaluation are not documented to such a degree in Dr. Sherman's own treatment notations from Mobile County Health Department (or in any other documentation of record). Dr. Sherman also referenced stroke as an impairment in his physical capacities evaluation. Regarding the claimant's cerebrovascular accident, notations from Mobile County Health Department from mid 2010 indicated that her stroke symptoms were resolving and that she had equal grip bilaterally. Only one notation from the health department documented abnormal physical findings regarding the claimant's post cerebrovascular accident, with the remainder failing to document ongoing difficulty related to stroke residuals. Further, the undersigned notes that a consultative evaluator with specialization in neurology, Dr. Shaikh, failed to conclude that the claimant experienced disabling or debilitating symptoms as a result of her stroke. Dr. Shaikh's neurological evaluation was thorough; his findings were primarily normal (with the exception of a mildly compromised tandem gait) and not indicative of an individual continuing to experience residual symptomatology related to a prior cerebrovascular accidence.

Specifically, according to Dr. Shaikh, the claimant showed poor effort in touching the fingers to the toes and she limped and favored her left leg. However, he noted that she did not use any hand held assistive device and had a normal association of arm swings. He further noted that the claimant had been treated for *mild* left-sided weakness related to her lacunar sensory motor infarct. Regarding potential pain related impairments, the undersigned notes that Mobile County Health Department notations cited only an assessment of backache and reflected either normal musculoskeletal system findings or minimal abnormality; i.e., tenderness to palpation on one occasion and pain with palpation of the lower lumbar spine on another occasion. Imaging of the claimant's lumbar spine illustrated *minimal* spurring; no compression fracture or subluxation; and either a small intervertebral disc herniation or Schmorl's node at the superior endplate of the L2 level. During Dr. Shaikh's evaluation, examination of the claimant's spine disclosed no tenderness to palpation and a fairly normal range of motion. The claimant testified that she did not use a cane, braces, or splints.

Nothing in the record suggests that the claimant's impairments have been incapable of being alleviated or controlled with the proper and regular use of prescription and/or over-the-counter medications. Multiple notations from Mobile County Health Department revealed that the claimant presented for prescription medication refills. The claimant testified that Lyrica helped and that she took over-the-counter medications for headaches (which helped if she caught the headache before it got too bad). The objective record contains no evidence of the claimant's ongoing difficulties with side effects of medication, when taken as prescribed. The undersigned additionally finds that there is no objective documentation that the claimant's performance of daily activities has been substantially impaired due to her diagnosed conditions. Dr. Starkey noted that the claimant could feed, groom, bathe, and dress herself without assistance. Dr. Starkey further noted that the claimant could manage money, prepare meals, shop for groceries, use a phone, and drive an automobile without assistance. Dr. Starkey further noted that the claimant could manage money, prepare meals, shop for groceries, use a phone, and drive an automobile without assistance. Moreover, Dr. Starkey stated that the claimant required no assistance for completing any instrumental activities of daily living. At her hearing, the claimant testified that she drove, did the laundry, did grocery shopping, attended church, watched television, read, and played video games on the computer. There is no indication from hearing testimony that the claimant experienced difficulty with her left hand that impacted on her ability to play computer games. The claimant also testified that she received unemployment for about 1½ years total, and she indicated actively seeking work while receiving unemployment. Other than the claimant's hospitalization for cerebrovascular accident, it is noteworthy that documentation of record does not contain any inpatient hospitalizations for the claimant for any condition. The undersigned further recognizes the paucity of medical evidence in this case for complaints surrounding her impairments and

7

finds it reasonable to assume that if the claimant were experiencing difficulties to a disabling degree, she would have presented to her physician for persistent, regular, and ongoing treatment.

The undersigned also notes that the claimant's clinical examination findings have often been found to be normal or minimally abnormal, and the objective diagnostic evidence of record has been sparse and/or not reflective of an individual experiencing debilitating or disabling symptoms. Imaging of the lumbar spine has been discussed in relation to the claimant's reports of backache. Imaging of the claimant's cervical spine reflected well preserved disc spaces, no anterior soft tissue swelling, and normal alignment and contour of the vertebrae with minimal spurring anteriorly at the C5 level. Additionally, no acute fracture or dislocation was appreciated. The undersigned notes, in relation to the claimant's complaints of migraine headache, that the record failed to document any finding diagnostic of or relevant to the condition. Carotid duplex studies showed mild to moderate plaquing at the level of the common carotid arteries bilaterally. Physical examination of record indicated that no sensory exam abnormalities were detected; no dysfunction in motor examination was observed; no coordination/cerebellum abnormalities were noted; and normal reflexes were detected. During neurological examination with Dr. Shaikh, the claimant did not demonstrate any dysarthria, dysphasia, or dysphonia; her face was bilaterally symmetrical. The claimant's motor strength was bilaterally symmetrical and 5/5 to abduction, adduction, flexion, and extension of the upper and lower extremities, despite Dr. Shaikh's opinion of her demonstration of poor effort on the left side. Physical examination disclosed no rigidity or spasticity. Additionally, the claimant's fine motor skills were normal; she was able to make a fist and oppose her thumb to her fingers; and she was able to turn the doorknob and tie her shoelaces. Dr. Shaikh also noted that the claimant's grip strength was 5/5 and bilaterally symmetrical; her sensations were intact; her Romberg was negative; her cerebellar functions were intact by finger-nose-finger, finger tapping, and rapid alternate movements; her deep tendon reflexes were 2+ bilaterally at the biceps, triceps, brachioradialis, knees, and ankles; and her toes were down going and there was no clonus.

While it is credible that the claimant experiences some degree of pain and other symptoms, it is not credible that she experiences the level of symptomatology to the extent alleged. Based on a review of the medical evidence of record, as well as the claimant's testimony at the hearing, the undersigned finds that the preponderance of the evidence contained in the record does not support the claimant's allegations of totally incapacitating pain and other symptomatology and that the claimant's statements regarding the severity, frequency, and duration of her symptoms are overstated. The record fails to document persistent, reliable manifestations of a disabling loss of functional capacity by the claimant resulting form her reported symptomatology. Therefore, the undersigned finds that the claimant's allegations of inability to work because of her subjective

symptoms are not fully credible, and all of the above factors lead the undersigned to a conclusion that the claimant's alleged symptoms and conditions are not of a disabling degree. After considering the entirety of the record, the undersigned concludes that the claimant would not be precluded from performing the physical and mental requirements of work activity on a regular and sustained basis.

**6.     The claimant is capable of performing past relevant work as a cleaner housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a **cashier** (DOT# 211.462-010), unskilled work at the light exertional level; **cleaner housekeeper** (DOT# 325.687-014), unskilled work at the light exertional level; **short order cook** (DOT# 313.374-014), semi-skilled work at the light exertional level; **industrial cleaner** (DOT# 381.687-018), unskilled work at the medium exertional level; and **flagger** (DOT# 372.667-022), unskilled work at the light exertional level. In comparing the claimant's residual functional capacity with the physical and mental demands of her work as a cleaner housekeeper, the undersigned finds that the claimant is able to perform it as actually and generally performed. Vocational expert testimony established that, based upon hypothetical question #1, the claimant's past relevant work as a cleaner housekeeper could be performed.

The undersigned is aware that other hypothetical questions were posed at the hearing that elicited different responses from the vocational expert. Those questions, however, contained residual functional capacities and/or hypothetical information that, upon further review of the credible record, are not accurate or have less evidentiary foundation. Accordingly, the vocational expert's responses thereto are of no probative value.

**7.     The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 41, 41-43, 43-44, 46 & 47-50 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

A claimant is entitled to an award of disability insurance benefits and supplemental security income when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. §§ 404.1505(a) & 416.905(a) (2013). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. §§ 404.1520(b) & 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities, she is not disabled. 20 C.F.R. §§ 404.1520(c) & 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. §§ 404.1520(d)& 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments prevent her from performing her past relevant work. 20 C.F.R. § 404.1520(f) & 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. §§ 404.1520(g) & 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the

---

[2] *See, e.g., McManus v. Barnhart*, 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration*, 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'"). [3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she is capable of performing her past relevant work as a cleaner/housekeeper, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] ). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

substantial evidence." *Id.* (citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-59 (11th Cir. 2004).

The plaintiff's sole argument in this case is that the ALJ committed reversible error in failing to give adequate and controlling weight to the opinion of plaintiff's treating physician, Dr. Kenneth Sherman, in violation of 20 C.F.R. §§ 404.1527 and 416.927, as well as SSR 96-2p. (Doc. 15, at 1.) More specifically, plaintiff contends that the ALJ erred in failing to accord controlling weight to the physical capacities evaluation ("PCE") and clinical assessment of pain ("CAP") forms completed by her treating family practitioner on June 13, 2011 (Tr. 347-349). (Doc. 15, at 3-6.)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed. Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per

curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's RFC and pain assessments must be supported by substantial evidence. *See id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.*, 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

In this case, the ALJ specifically determined that great weight could not be accorded numerous findings by Dr. Sherman reflected in the June 13, 2011 PCE and CAP.

> The undersigned cannot grant great weight to the findings of Dr. Sherman in his physical capacities evaluation, in that the credible, objective record, including his own records from Mobile County Health Department, do not support the limitations he placed on the claimant's sitting, standing, and walking, as well as lifting and carrying. Additionally, the undersigned references Dr. Sherman's citation of "multiple TIA's" in Exhibit 10F and finds no evidence in the current record, including notations of Dr. Sherman, that the claimant experienced any difficulty with such condition. The findings with respect to pain made in his clinical assessment of pain evaluation are not documented to such a degree in Dr. Sherman's own treatment notations from Mobile County Health Department (or in any other documentation of record). Dr. Sherman also referenced stroke as an impairment in his physical capacities evaluation. Regarding the claimant's cerebrovascular accident, notations from Mobile County Health Department from mid November 2010 indicated that her stroke symptoms were resolving and that she had equal grip bilaterally. Only one notation from the health department documented abnormal physical findings regarding the claimant's post cerebrovascular accident, with the remainder failing to document ongoing difficulty related to stroke residuals. Further, the undersigned notes that a consultative evaluator with specialization in neurology, Dr. Shaikh, failed to conclude that the claimant experienced disabling or debilitating symptoms as a result of her stroke. Dr. Shaikh's neurological evaluation was thorough; his findings were primarily normal (with the exception of a mildly compromised tandem gait) and not indicative of an individual continuing

13

> to experience residual symptomatology related to a prior cerebrovascular accidence. Specifically, according to Dr. Shaikh, the claimant showed poor effort in touching the fingers to the toes and she limped and favored her left leg. However, he noted that she did not use any hand held assistive device and had a normal association of arm swings. He further noted that the claimant had been treated for *mild* left-sided weakness related to her lacunar sensory motor infarct. Regarding potential pain related impairments, the undersigned notes that Mobile County Health Department notations cited only an assessment of backache and reflected either normal musculoskeletal system findings or minimal abnormality; i.e., tenderness to palpation on one occasion and pain with palpation of the lower lumbar spine on another occasion. Imaging of the claimant's lumbar illustrated *minimal* spurring; no compression fracture or subluxation; and either a small intervertebral disc herniation or Schmorl's node at the superior endplate of the L2 level. During Dr. Shaikh's evaluation, examination of the claimant's spine disclosed no tenderness to palpation and a fairly normal range of motion. The claimant testified that she did not use a cane, braces, or splints.

(Tr. 47-48.) Thus, as is clear from the foregoing, the ALJ's articulated reasons for rejecting Dr. Sherman's CAP assessment and numerous findings on his PCE assessment are that the findings encompassed therein are not bolstered by the evidence of record, including the treating family practitioner's own medical records, all of which support contrary findings (*id.*). *See Gilabert, supra,* 396 Fed.Appx. at 655. The Court finds the ALJ's articulated reasons for rejecting Dr. Sherman's CAP and specific PCE findings supported by substantial evidence.

The medical evidence reflects that Loyd was hospitalized on October 16, 2010, and treated over the course of the next several days for a sensory motor lacunar stroke affecting the left side of her body. (Tr. 241-249.) On admission, the claimant did have some noticeable mild left-sided weakness but no other serious neurological deficits. (*Id.* at 241 & 242.) The consulting neurologist, Dr. William Denson, performed a neurological examination that revealed the following:

> This is an alert, cooperative white female in no acute distress. Speech is normal. Pupils are 2.5 mm and symmetrically reactive to light. Visual fields are full, and she is not extinguished. Extraocular movements intact without nystagmus. Facial sensation is slightly reduced to light touch on

the left. There is minimal effacement to left nasolabial fold. Tongue and palate are midline. Neck supple. On motor testing, there is a very mild left hemiparesis with 4+/5 strength noted on the legs and she could easily oppose gravity. There is a very mild pronator drift to extended left arm. Ocular movements are mildly slowed when compared to the right. Light touch and pinprick are mildly reduced in the left arm and intact in the left leg. DTRs were 0-1+ bilaterally. Plantar responses are flexor. No tremor or ataxia.

(Tr. 245.) Loyd's condition significantly improved over the next forty-eight (48) hours and she was discharged from the hospital on October 19, 2010. (Tr. 246.) Plaintiff's treating family practitioner at the Mobile County Health Department, Dr. Kenneth Sherman, treated plaintiff one week later, on October 26, 2010 (Tr. 268-269), and another two times over the course of the next eight months before completion of the aforementioned PCE and CAP (*compare* Tr. 262-267 *with* Tr. 347-349 & 354-356). Although Dr. Sherman's office notes from October 26, 2010 reference "residual left side weakness[]" (Tr. 268), the neurological exam was normal (Tr. 269 ("No sensory exam abnormalities were noted. [] A motor exam demonstrated no dysfunction. [] No coordination/cerebellum abnormalities were noted."))[5] Some three and one-half months later, on February 14, 2011[6] --after noting plaintiff had decided to apply for disability, would bring in a form to be filled out, and that he would "assist as much as possible"—Dr. Sherman's neurological exam revealed several abnormal findings (Tr. 263 ("*Speech:* [] Demonstrated sound distortions. *Motor:* [] Strength was reduced [o]n the left side. *Coordination/Cerebellum:* [] Incoordination on the left side. [] Past-pointing was seen. *Balance:* [] Limited.")). Two weeks later, on March 1, 2011, however, Dr. Sherman's

---

[5] Sherman's examination of plaintiff's back revealed merely some tenderness to palpation. (Tr. 269.)

[6] In the interim, Certified Registered Nurse Practitioner Andrea S. Pitts observed on November 15, 2010 that plaintiff's stroke symptoms were resolving as Loyd demonstrated equal grip bilaterally. (Tr. 265.)

office notes contain no mention of a neurological exam or abnormal findings, the sole focus of plaintiff's visit being her complaints of bad headaches. (Tr. 262.)[7] Most importantly, when Dr. Sherman completed the PCE and CAP on June 13, 2011 (Tr. 347-349), the completion of those forms and refilling Loyd's prescriptions were the sole focuses of plaintiff's visit (Tr. 355 ("The Chief Complaint is: Rx refill. [N]eeds forms filled out.")), there being no physical examination of plaintiff by Dr. Sherman (*see id*. (reflecting as the sole physical findings plaintiff's vital signs obtained by the nurse)).

The foregoing review of Dr. Sherman's pertinent medical records reflect few abnormal objective findings and nothing about those abnormal findings on February 14, 2011 support a determination that those abnormalities persisted on June 13, 2011 so as to support the sitting, standing, walking, and lifting/carrying limitations reflected on the PCE.[8] Moreover, no objective findings contained in the remainder of the pertinent

---

[7] Dr. Mark Pita's April 13, 2011, examination notes reveal no neurological exam, presumably due to plaintiff's chief complaint being low back pain. (Tr. 356-358.) Indeed, Dr. Pita made no mention of plaintiff's October 2010 stroke. (*See id.* at 357.) Moreover, Pita's notes contain no objective abnormal findings on examination of the back. (*See id.*)

[8] Moreover, based on the very limited office notes supplied by Dr. Sherman on June 13, 2011, it appears that the treating family practitioner based the CAP findings (Tr. 348-349) upon Loyd's complaints of low back pain (*compare id. with* Tr. 355 (containing plaintiff's June 13, 2011 allegations that her low back pain was 8 on a 10-point scale and the pain was persistent, sharp, dull, burning and throbbing)). However, Dr. Sherman's previous office notes contain but one position objective sign of back pain—tenderness to palpation (Tr. 269)—that is certainly not enough information supportive of the CAP findings. Moreover, no other evidence in the record supports such CAP findings. (*See* Tr. 319 ("No tenderness to palpation [of spine] and fairly normal range of motion."); Tr. 321 (noting poor effort by plaintiff in range of motion testing of the spine); Tr. 353 (on October 3, 2011, Dr. Pita noted plaintiff's musculoskeletal system was normal); Tr. 365 (x-rays of the lumbar spine revealed minimal spurring and small intervertebral disc herniation or Schmorl's node at the superior endplate of L2); Tr. 366-367 (February 2, 2012 exam by Dr. Pita revealed pain with palpation of lower lumbar spine but that pain was reported or found to be only a 3 on a 10-point scale).) Finally, there is nothing about plaintiff's low back ailment—described by all physicians at the Mobile County Health Department as a "backache"—which could reasonably be expected to cause the pain described by Dr. Sherman on the June 13, 2011 CAP, in large measure because of plaintiff's described activities of daily living (Tr. 77-78 (plaintiff's testimony that she is capable of driving and does drive despite the fact her license has been suspended, she attends church and visits her daughter and grandson, and occupies herself daily with TV, reading, and videogames on the (Continued)

16

medical evidence support the sitting, walking, standing, and lifting/carrying limitations reflected on Dr. Sherman's PCE. Indeed, the detailed neurological examination conducted by consulting neurologist Dr. Ilyas A. Shaikh on April 22, 2011 was essentially normal. (Tr. 320 ("Ms. Loyd . . . does not demonstrate any dysarthria, dysphasia or dysphonia. Face is bilaterally symmetrical. Tongue and uvula are midline. Pupils are bilaterally symmetrical and reactive to light. Extra-ocular movements are intact. Funduscopic examination shows bilateral sharp disc margins. There is no ptosis. Hearing is bilaterally intact. . . . Motor strength is bilaterally symmetrical and 5/5 to abduction, adduction, flexion and extension of upper and lower extremities despite demonstrating poor effort on the left side. There is no rigidity or spasticity. Fine motor skills are normal. She is able to make a fist and oppose thumb to fingers. She is able to turn the door knob and tie her shoelaces. Her grip strength is 5/5 and bilaterally symmetrical. . . . Sensations are intact to pin prick, light touch, proprioception, and temperature. Romberg is negative. . . . Cerebellar functions are intact by finger nose finger, finger tapping and rapid alternate movements. . . . Deep tendon reflexes are 2+ bilaterally at biceps, triceps, brachioradialis, knees and ankles. Her toes are down going and there is no clonus. . . . She is able to stand on her heels and toes. Her tandem gait is mildly compromised. She showed poor effort in touching the fingers to the toes. She limps and favors her left leg. She is not using any hand held assistive device. She has normal association of hand swings.").) Moreover, the consulting psychologist, Dr. Kenneth Starkey, observed in his April 27, 2011 report that though plaintiff complained

---

computer)) and maintenance of a fairly constant weight (Tr. 61 (plaintiff's testimony that her weight stays around 146 pounds)). Accordingly, the Court finds that the ALJ did not err in rejecting Dr. Sherman's CAP findings.

17

of left arm and leg weakness, she did not demonstrate those deficits during their "meeting[.]" (Tr. 324.) Finally, Dr. Pita's examination findings from October 3, 2011 and February 2, 2012 reflect no abnormal findings on neurological examination. (*Compare* Tr. 353 ("*Cranial Nerves:* [] Normal. *Motor:* [] A motor exam demonstrated no dysfunction. *Coordination/Cerebellum:* [] No coordination/cerebellum abnormalities were noted.") *with* Tr. 367 (same).) Thus, the ALJ did not commit reversible error in rejecting the sitting, standing, walking, and lifting/carrying limitations found by Dr. Sherman on the June 13, 2011 PCE, her reasons for rejecting those limitations being supported by substantial evidence.[9]

Because plaintiff raises no other issues, the Commissioner's fourth-step determination is due to be affirmed. *Compare Green, supra,* 223 Fed.Appx. at 923 ("[T]he burden lies with the claimant to prove her disability. . . . In the fourth step of that analysis, the ALJ determines the claimant's RFC and her ability to return to her past relevant work.") *with Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 48 (11th Cir. Oct. 26, 2012) ("'The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits.'") and *Conner v. Astrue,* 415 Fed.Appx. 992, 995 (11th Cir. Feb. 28, 2011) ("An individual who files an application for Social Security Disability . . . Benefits must prove that she is disabled.").

## **CONCLUSION**

---

[9] Indeed, even if plaintiff still experiences a modicum of residual mild left-sided weakness (*see* Tr. 320 ("Despite her neurological examination being fairly normal she continues to demonstrate left sided weakness.")), such weakness was fairly contemplated in the hypothetical question posed to the vocational expert (*see* Tr. 83-84) and would not prevent the right-hand dominate plaintiff (*see* Tr. 61) from performing her past relevant work as a cleaner/housekeeper (*compare* Tr. 84 *with* Tr. 46-50).

18

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 23rd day of June, 2014.

>s/WILLIAM E. CASSADY
>**UNITED STATES MAGISTRATE JUDGE**